IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CHRISTOPHER GOODVINE,

                         Plaintiff,                                OPINION AND ORDER

    v.                                                   12-cv-134-wmc

GARY ANKARLO, LIEUTENANT BOODRY,
OFFICER CONROY, JEFF HEISE, DR. JOHNSON,
OFFICER JULSON, DR. KUMKE, DR. McLARIN,
MICHAEL MEISNER, OFFICER MILLONIG,
CAPTAIN MORGAN, DR. NELSON, JANEL NICKEL,
OFFICER SCHNEIDER, OFFICER WILEY,
and OFFICER WITTERHOLT,

                            Defendants.

This omnibus opinion and order deals principally with the following motions filed by *pro se* plaintiff Christopher Goodvine: (1) June 10, 2013, Motion for Protective Order and Motion to Enforce Preliminary Injunction (dkt. #115); (2) June 20, 2013, Motion for Sanctions (dkt. #122); (3) July 9, 2013, Motion to Compel (dkt. #142); (4) July 9, 2013, Motion to Compel (dkt. #143); (5) July 15, 2013, Supplemental Motion for Sanctions (dkt. #144); (6) July 17, 2013, Motion for Protective Order (dkt. #150); and (7) August 5, 2013, Motion to Compel (dkt. #158); (8) August 13, 2013, Motion for Leave to Proceed Against Drs. Baird and Ankarlo (dkt. #161); (9) August 13, 2013, Motion to Leave to Move for Summary Judgment (dkt. #162); and (10) September 4, 2013, Motion for the Court to Take Notice (dkt. #168).   In light of Dr. Kenneth Robbins' filing of his September 4, 2013, independent psychiatric report (dkt. #166), this court will also order a telephone conference on September 26, 2013, at 9:30 a.m. to address the next steps in this litigation.

OPINION

## I. June 10, 2013, Motion to Enforce Preliminary Injunction (dkt. #115)

On February 2, 2013, this court entered a preliminary injunction ordering defendants to implement the following protocol for plaintiff's safety:

> (a) plaintiff must be placed on "observation" status as soon as reasonably practicable after he reports a strong urge to harm himself to any prison staff, either verbally or in writing;
>
> (b) defendants may release plaintiff from "observation" status upon the considered decision of his psychological care providers after seeking input from plaintiff;
>
> (c) defendants must place plaintiff in a physical (four-point, chair, or other type) restraint for a single, four-hour period if plaintiff (1) has been in observation continuously for at least the twelve previous hours, (2) reports an uncontrollable urge to harm himself, (3) has some means to do so, and (4) volunteers to be placed in restraints; and
>
> (d) all defendants should consider themselves under a direct obligation to comply with this court order, and to ensure compliance with this order from all subordinates.

(Preliminary Injunction (dkt. #59) 19.)

Plaintiff now asserts that defendants and their subordinates are not implementing the court's order, citing to the following two incidents as support: (1) on May 20, 2013, plaintiff was placed in restraints for nine hours, instead of "a single, four hour period" as set forth in the court's Preliminary Injunction Order; and (2) on June 1, 2013, plaintiff disclosed that he was in possession of two ink pens and asked to be put into restraints, which the staff ignored, resulting in his eventually cutting himself and having to be transported to the emergency room.

2

As to the first incident, defendants correctly point out that the court's preliminary injunction order sets forth a specific amount of time that plaintiff must be placed into restraints if the four conditions in subsection (c) of the Preliminary Injunction Order above are met, but sets forth no minimum amount of time if restraints are otherwise justified.  Of course, this assumes that medical staff approved and institutional protocols were met before any such restraint.  It also assumes the continued necessity of the court's original Preliminary Injunction order in light of Dr. Robbins' recent report.   In the meantime, to dispel any confusion on this issue, the court clarifies that plaintiff's mental healthcare providers may authorize that he be kept in restraints (1) for longer periods than four hours without violating the court's order or (2) for shorter periods than four hours if all four conditions in subsection (c) of the Preliminary Injunction Order have not preceded the imposition of restraints *or* an overriding psychological or medical necessity dictates a shorter period.  Of course, defendants must be mindful of the risks of violating plaintiff's Eighth Amendment rights if they keep him in restraints too long without a break, but no such violation is alleged or at issue here.

The second incident is more troubling.  Plaintiff has once again managed to cut himself.   Both sides agree that around 7:30 pm on June 1, 2013, plaintiff asked Lieutenant Pitzen to be placed in restraints.  Pitzen avers that he responded by searching plaintiff and his cell, successfully recovering all pen inserts he was aware of.  He says that plaintiff did not renew his request for restraints after this thorough search.  Plaintiff, in contrast, says that Pitzen only recovered one of his two pen inserts, knew that plaintiff had retained possession of the other one, yet left him alone and unrestrained in his cell.

3

Although it is undisputed that Lieutenant Pitzen responded promptly and vigorously to the situation, *even under defendants' version* of the facts Pitzen's conduct might still amount to a violation of this court's injunctive order.[1]  The factual dispute over whether Pitzen knew about the second pen insert presents a classic he-said / she-said situation that can only be resolved with an evidentiary hearing, although sanctions would not appear warranted even accepting plaintiff's version of the facts.  Because convening a prisoner hearing is a significant administrative burden, however, the court will not hold a hearing on this issue alone, but will instead consolidate any hearing on this matter with an anticipated evidentiary hearing at which both parties will be given an opportunity to examine the court-appointed, neutral expert and put on any additional evidence they may wish as to the adequacy of the mental health care afforded to plaintiff to date.  Accordingly, ruling on plaintiff's motion to compel and for sanctions will be denied as to plaintiff's complaint about his time in restraints, but reserved as to the circumstances surrounding plaintiff's most recent cutting.

## II.   June 10, 2013, Motion for Protective Order (dkt. #115)

Plaintiff asserts that since June 4, 2013, correctional officers have "destroyed" his cell daily, shuffling his legal files and strewing them about, hampering his preparation for this case.  He also complains that (1) the cell searches are sometimes done in the middle

---

[1]   Plaintiff also complains about Officer Quade's failure to place him in restraints at around 9:00 pm, but these allegations do not amount to a violation of the court's order, since there is no indication from plaintiff that Quade knew about plaintiff's possession of the pen until plaintiff had already cut himself.

of the night and (2) that he is strip searched and left naked while his cell search is completed.[2]  The officers explain that they have been instructed to strip search plaintiff and "flip" his cell every day, in an effort to uncover materials that he may use to harm himself.  On multiple occasions, these searches have produced staples, sharpened pen inserts and other such materials.

Although the court certainly does not condone cell searches taken solely for the purposes of disrupting a prisoner's litigation efforts, it is unsympathetic to plaintiff's complaint in this instance.  One key element of plaintiff's complaint *in this very lawsuit* is that prison officials fail to search him and his cell thoroughly for contraband.  Now, he would have the guards both thoroughly search his cell, and return every searched item neatly back to its original place.  In other words, plaintiff seeks to shift all of the inconvenience of his self-harming behavior onto defendants, and bear none of it himself.  The court is disinclined to further add to defendants' burden, especially where (contrary to plaintiff's representations) defendants' searches have not significantly prevented him from litigating this case as evidenced by his flurry of motions.


III.    **June 20, 2013, Motion for Sanctions and Supplement (dkt. ##122, 144)**

On May 16, 2013, the court partially granted plaintiff's motion to compel, ordering defendants to produce numerous documents and to respond to certain interrogatories and requests for admission.  Plaintiff now alleges continuing non-

---

[2]  Plaintiff also alleges that the officers stole his legal papers.  This claim is addressed separately in Section IV below.

compliance with document requests ##5, 6, 9, 10, 11, 12, and 22, and interrogatories ##4 and 5, and asks for sanctions.  Plaintiff also asks the court to order (for a second time) defendants to produce requested documents ##10, 11, 12 and 22, and interrogatory #4, which plaintiff maintains exist and are in defendants' possession.[3]

In response, defendants explained that supplemental responses to the document requests and interrogatories listed above have since been produced, and were sent to plaintiff on June 28.  (*See* dkt. ##126, 127.)  When asked to comment on defendants' representation, plaintiff did not dispute that the responses have indeed been produced, nor has he indicated dissatisfaction with the content of the production.  Instead, he continues to argue that defendants should be sanctioned for taking more than a month to respond in light of the standard 30-day discovery response deadlines found at Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A), and 36(a)(3).

Given plaintiff's apparent concession that he received satisfactory responsive documents on or around June 28, the court will not sanction defendants for taking more than 30 days to comply with the court's order compelling discovery.  While defendants are certainly cautioned to avoid excessive delay, plaintiff's requests for production and admission have been extensive and burdensome.  Moreover, the court set no deadline by which to comply with its order.  These motions will, therefore, be denied.

---

[3] Plaintiff has also objected to the court's earlier decision to deny some portions of his initial motion to compel production of documents.  (*See* dkt. #144, at 1.)  The court declined to order defendants to produce certain documents, relying on defendants' representations that the requested documents were already in plaintiff's security file, available for his inspection.  Plaintiff now complains that he has had the opportunity to view his security file, and found very few responsive documents there.  All this means, however, is that defendants had few responsive documents to produce.  Absent *evidence* that defendants are withholding files, the court will not revisit its earlier order.

**IV.    July 9, 2013, Motion to Compel (dkt. #142)**

Plaintiff also filed a motion to compel production of a "stolen" document. Plaintiff says that the document is a declaration authored by a former correctional officer, Mark Pitel, attesting that he witnessed plaintiff appearing suicidal and asking to be placed into restraints, that Pitel reported this to his supervisors, and that the supervisors took no action. Plaintiff asserts that sometime between June 26 and July 3, 2013, the declaration went missing from his cell. Plaintiff believes it was taken during one of the daily searches defendants have begun to implement, then passed on to defendants' counsel at the Wisconsin Department of Justice.

Defendants' predictable response is that no documents have been confiscated, let alone passed on to their legal counsel. In fact, defendants say, the Department of Corrections contacted Mr. Pitel about this very matter and he confirmed that although he had previously compiled an incident report for a November 10, 2010, self-harm attempt by plaintiff, he never drafted a declaration on that subject for plaintiff or anyone else. Plaintiff replies that, to the contrary, he had a copy of a declaration completed by Mr. Pitel, but that it is now missing from his papers.

This is another factual dispute that can only be resolved at a hearing. Accordingly, ruling on this motion to compel will be reserved. At the next evidentiary hearing, the court will take up this issue.

**V.      July 9, 2013, Motion to Compel (dkt. #143)**

    **A.   Plaintiff's Renewed Objections to Defendant's Response to the Court's Earlier Order to Compel**

On May 16, 2013, the court partially granted plaintiff's motion to compel, ordering defendants to produce certain documents and to respond to certain interrogatories and requests for admission. Defendants produced supplemental responses and plaintiff has now moved for sanctions, alleging that these supplements fail to comply with the court's order. The court will reserve on some of plaintiff's requests for sanctions and will deny others.

        **i.   Interrogatory #1**

In his Interrogatory #1, plaintiff asked defendants Meisner, Nickel and Morgan to list all of their conversations and investigations regarding plaintiff's episodes of self-harm dating back to August of 2010. Defendants responded by producing email conversations about a July 2012 incident of self-harm, and email conversations from April 2013 unrelated to plaintiff's self-harm. Plaintiff objects that more conversations or investigations must have taken place, and suggests that defendants are not responding in good faith. Defendants' brief in opposition says that they "do not recall any other significant conversations or investigations concerning" plaintiff. (Dkt. #145 at 2.) If that is true, then defendants have done all the court can ask of them. However, defendants' brief is not supported by an affidavit from any of the three defendants, nor can the court find copies of defendants' signature on the discovery response produced. Before the court makes any decision on the question of sanctions, defendants Meisner, Nickel and Morgan are directed to provide an affidavit attesting that their supplemental

8

response to Interrogatory #1 is complete, made in good faith and in compliance with the court's order.

### ii.    Document Request #5

In his Document Request #5, plaintiff requested production of all policies, directives, instructions, memos or emails concerning the appropriate ways to deal with his acts or threats of self-harm. The court partially granted plaintiff's subsequent motion to compel these documents, and defendants reiterated in response that there are simply no documents in this category to produce. Plaintiff again objects, stating that there is ample evidence that CCI staff discussed his self-harm, and that some of these discussions or instructions must have been documented. Defendants' most recent rejoinder is that no documented conversations can be found. However, defendants' position is not supported by an affidavit from the person or persons who purportedly did the "comprehensive search of paper files and emails" that turned up no documents. Defendants are directed to provide an affidavit from this person(s), briefly describing the paper file locations searched, as well as the email databases accessed and the keywords used.

### iii.    Document Request #22

In his Document Request #22, plaintiff asked for all PSU Treatment Plans or Security Protocols in place to prevent him from committing acts of self-harm. When plaintiff followed up with a motion to compel, the court instructed defendants to indicate if any responsive documents exist outside of plaintiff's medical file, which is available for his inspection. Defendants' supplemental response indicated that all relevant documents

9

are located in that file.  Plaintiff's current objection contends that he cannot find a single written DOC "treatment plan" in his medical records.  Defendants do not deny plaintiff's assertion, but rather have responded that "PSU staff worked together in coordinating Goodvine's treatment plan and this treatment plan has grown and changed over the entire period since its inception."  Defendants' response indicates that the contents of the file available to plaintiff comprise all written treatment plans produced for plaintiff. Defendants needn't respond further.  If the file contains no written treatment plans, plaintiff may use this fact to his advantage on summary judgment or at trial.

### B. Motion to Compel Answers and Documents Pursuant to New Discovery Requests

As part of ongoing discovery, plaintiff has served defendants with additional requests for admission, and now brings a motion to compel a response.  Some requests to compel discovery will be granted and others denied, as described below.

#### i. Third Request for Admission #8

a. **Plaintiff's Complaint:** Dr. Buhr was asked to admit that prior to February 2013 there were no treatment plans in place to monitor plaintiff's self-harm urges.  Defendants erroneously object that the request is "overly broad, ambiguous and requires speculation." Moreover, their denial is not responsive to the request.

b. **Court Ruling:** Plaintiff's motion is granted.  Defendant's denial is not responsive to plaintiff's request for admission, as defendants' statement that they conducted clinical monitoring is not the same thing as having a treatment plan.  If Dr. Buhr believes there was a plan, the denial should say so directly.

ii.   **Third Request for Admission #9**

    a.   **Plaintiff's Complaint:** Defendants were asked to admit that plaintiff initiated discussions about the need for a treatment. Defendants erroneously object that the request is "overly broad, ambiguous and requires speculation." Moreover, their denial is not responsive to the request.

    b.   **Court Ruling:** Plaintiff's motion is denied.  Defendant's denial is responsive.

iii.   **Third Request for Admission #16**

    a.   **Plaintiff's Complaint:** Defendants were asked to admit that no treatment plan has been in effect since April 2013.  Defendants' denial is not responsive to the request.

    b.   **Court Ruling:** Plaintiff's motion is denied.  Defendant's response amounts to a statement that there was a treatment plan in place in February that has continued (with modifications) until now.

iv.   **Third Request for Admission #18-19**

    a.   **Plaintiff's Complaint:** Defendant Nickel was asked to admit that plaintiff was placed on a "no container" restriction at his request, and that Nickel removed the restriction.  Defendants erroneously object that they lack specific knowledge to admit or deny this particular incident because it is not in the records.  Plaintiff has identified a range of fourteen conduct reports and one of these reports documents this incident.

    b.   **Court Ruling:** Plaintiff's motion is granted.  Defendants are directed to look through the 14 conduct reports to determine if there is material that would allow them to confirm or deny the incident.

v.   **Third Request for Admission #22**

    a.   **Plaintiff's Complaint:** Defendants were asked to admit that after a particular incident involving a sharpened pen insert he was not placed on an "all sharps" restriction.  Defendants' response includes extraneous material that should be stricken.

    b.   **Court Ruling:** Plaintiff's motion is denied.  Defendants answered the question.  The rest of their response is immaterial but needn't be stricken.

11

vi.   **Third Request for Admission #23**

   a.   **Plaintiff's Complaint:** Defendants were asked to admit that a particular inmate was found to have injured himself with an ink pen but not placed on a pen restriction. Defendants erroneously object that the request asks for information that is confidential and protected by law.

   b.   **Court Ruling:** Plaintiff's motion is granted. Defendants' initial objection was correct. However, a health care provider may disclose protected medical information under HIPAA if required to do so by a court order. *See* 45 C.F.R. § 164.512(e)(1)(I). Defendants should consider this the necessary order provided that any publicly filed document referencing the subject inmate do so by his initials rather than his actual name.

vii.   **Third Request for Admission #24**

   a.   **Plaintiff's Complaint:** Defendants were asked to admit that plaintiff has only been placed on an ink pen restriction once since July 2010 and that he was removed from the restriction within a week. Defendants' response is misleading.

   b.   **Court Ruling:** Plaintiff's motion is denied. Defendants answered the question. The rest of their response is immaterial, even if misleading.

viii.   **Third Request for Admission #25**

   a.   **Plaintiff's Complaint:** Defendants were asked to admit that CCI has never employed X-rays to prevent prisoners with self-harm histories from harboring items to commit self-harm. Defendants' response is misleading.

   b.   **Court Ruling:** Plaintiff's motion is denied. Defendants provided a detailed and responsive answer to plaintiff's question.

ix.   **Third Request for Admission #28**

   a.   **Plaintiff's Complaint:** Defendants were asked to admit that security staff was aware of a strong likelihood that plaintiff could be "secreting" items on his person. Defendants erroneously object to the question as "overly broad, ambiguous and requires speculation."

   b.   **Court Ruling:** Plaintiff's motion is granted although his question is poorly phrased. Defendants should answer the question, as re-

written: "Admit that between 2010 and 2013 defendants Nickel, Morgan, Meisner, Buhr and Kumke were aware that plaintiff had the tendency and ability to 'secrete' items on his person that could be used for self-harm."

    **x.**   **Third Request for Admission #32**

        **a. Plaintiff's Complaint:**  Defendants were asked to admit that when conducting a strip search an officer is unable to fully and completely inspect a person's mouth and that a person can "secrete" items in his cheek.  Defendants erroneously object to the question as "overly broad, ambiguous and requires speculation."

        **b. Court Ruling:**  Plaintiff's motion is granted.  Defendants should answer the question as accurately as possible, explaining the expected result if a strip search were carried out according to DOC policy, and identifying specific areas of uncertainty, if any.

## VI.   July 17, 2013, Motion for Protective Order (dkt. #150)

Plaintiff asserts that "he has, for some time, been aware that some of his correspondences . . . and legal documents he has submitted for copying have disappeared."  However, he does not mention which documents, when the incidents occurred, who he submitted the documents to, or any other details that would add credibility to his motion.  Not surprisingly, defendants represent that no CCI staff report having confiscated any of his documents, and defendants protest ignorance about any particular act of confiscation that plaintiff may be referring to.  In the absence of further detail, the court will deny plaintiff's motion for a protective order.

**VII.   August 5, 2013, Motion to Compel and For Leave to Serve Additional Interrogatories (dkt. #158)**

As part of ongoing discovery, plaintiff has served defendants with additional requests for admission and interrogatories, and now brings a motion to compel a response.  Some requests will be granted and others denied, as described below.

## A. Fourth Request for Admission #2

i.    **Plaintiff's Complaint:** Defendants were asked to admit that they (1) met with plaintiff and (2) implemented no security plan for plaintiff after the meeting.  Defendants' denial is not in good faith.

ii.   **Court Ruling:** Plaintiff's motion is denied.  Defendants' one-word response should have explicitly noted that it applies to both parts of plaintiff's two-part question (itself problematic).  Defendants have, however, answered the question.

## B. Fourth Request for Admission #5

i.    **Plaintiff's Complaint:** Defendants were asked to admit that overdosing is still "a problem" among prisoners in DS-1.  Defendants' response does not answer the question.

ii.   **Court Ruling:** Plaintiff's motion is denied.  Defendants have answered to the extent they admit that instances of overdosing by prisoners in DS-1 have not been eliminated.  As for whether defendants have an official litigation position regarding whether this is or previously was a "problem," this issue is simply not relevant to the deliberate indifference claims before the court and defendant need not respond.

## C. Fourth Request for Admission #6

i.    **Plaintiff's Complaint:** Defendants were asked to admit that plaintiff attempted to put a therapeutic restraint protocol in place before the incidents of self-harm giving rise to this lawsuit.  Defendant's respond that they do not know and cannot discern from the records whether plaintiff requested a protocol before the first incident of self-harm at issue in this suit.  This response is in bad faith, because treatment documents show plaintiff requesting a treatment protocol before his first incident of self-harm on September 29, 2011.  (*See* dkt. #64-1, at PSU 189 (notes reflecting a request for a therapeutic restraint protocol on March 8, 2011).)

14

    **ii.** **Court Ruling:** Plaintiff's motion is granted and the point is deemed admitted.  The court understands that some of plaintiff's requests for admission may require a search of the record, but expects defendants to take its discovery duties seriously.  Plaintiff is awarded $1.20 for postage, $2.40 for copies, $2.50 for labor pursuant to Rule 37(c)(5), along with $100 in court-ordered sanctions.

### D. Fourth Request for Admission #14-15

    **i.** **Plaintiff's Complaint:** Defendants were asked to admit that another prisoner in segregation has cut himself and -- unlike plaintiff -- is not subject to daily cell searches.  Defendants erroneously object that this information is irrelevant.

    **ii.** **Court Ruling:** Plaintiff's motion is denied.  Plaintiff says that the treatment of other similarly-situated prisoners shows that he is receiving special protection because of this lawsuit.  However, this fact has no relevance to whether defendants' past actions violated plaintiff's rights, nor does it impact defendants' prospective legal duties under the law.

### E. Fourth Set of Interrogatories #1-2

    **i.** **Plaintiff's Complaint:** Defendant McLarin was asked to answer questions about her treatment of another inmate who subsequently committed suicide.  Defendants' objection about relevancy is incorrect because McLarin's treatment of that inmate reflects her general practice of treating self-harming inmates, including plaintiff.

    **ii.** **Court Ruling:** Plaintiff's motion is granted.  Evidence of McLarin's practice treating other inmates is relevant to how she treated plaintiff, a disputed fact question.  While defendants' initial HIPAA-based objection was well founded, a health care provider may disclose protected medical information under HIPAA if required to do so by a court order. *See* 45 C.F.R. § 164.512(e)(1)(I). Defendants should consider this the necessary order provided that any publicly filed document referencing the subject inmate do so by his initials rather than his actual name.

### F. Fourth Set of Interrogatories #3

    **i.** **Plaintiff's Complaint:** Plaintiff refers the court to his Fourth Request for Admission #14-15.

    **ii.** **Court Ruling:** Plaintiff's motion is denied for the reasons given in the court's ruling on the Fourth Request for Admission #14-15.

## G. Fourth Set of Interrogatories #4

i. **Plaintiff's Complaint:** Defendants were asked to disclose the number of prisoner overdoses on the DS-1 unit in certain years.  Defendants object that this is too burdensome a request, requiring extensive searches through paperwork.  But defendants should be required anyway.

ii. **Court Ruling:** Plaintiff's motion is denied.  The relevance of this information to plaintiff's case is minimal and outweighed by the burden on defendants.

## H. Fourth Set of Interrogatories #5

i. **Plaintiff's Complaint:** Defendants Nickel and Meisner were asked to state how "prisoner checks" can be made from the control station, and to estimate how many checks were made from that location between October 1 and October 17, 2011.  Defendants erroneously object that the request is overly broad, burdensome and requires speculation.

ii. **Court Ruling:** Plaintiff's motion is denied.  The request is not overly broad, or burdensome, but it requires Nickel and Meisner to make estimates about behavior they did not witness, and thus to speculate. These defendants appear to have done their best to state what usually happens or is supposed to happen.

## I. Motion for Leave to Serve Additional Interrogatories

i. **Court Ruling:** Plaintiff's motion for leave to serve additional interrogatories is denied.  Plaintiff's case has two foci: (1) his request for injunctive relief mandating that defendants implement more stringent protective measures to prevent his acts of self-harm; and (2) his request for damages arising out of alleged deliberate indifference by prison staff on several previous occasions.  The court has substantially assisted plaintiff by appointing an independent expert to opine on the first focus area.  Plaintiff's discovery efforts appear mostly directed at the second focus area, and include extensive requests for admissions and document production.  Although plaintiff reasonably explains that he is forced to load up on written discovery because he is unable to take depositions, his written discovery at times reaches far beyond the incidents of his own self-harm, including requests for information about self-harm by other prisoners and other incidents only tangentially related to his complaint. While these incidents may have *some* relevance to the claims, the discovery is unnecessarily intrusive into the confidentiality of other inmates' health records, as well as beginning to impose a burden on defendants and on this court disproportionate to any possible relevance.

16

Plaintiff's claims of deliberate indifference are not so complex, nor insidious, to require further discovery into general prison policies and practices, much less the specific treatment of other inmates. Finally, plaintiff has had ample opportunity to inquire about the particular incidents that underlie his claims.

## VIII.   Motion to Proceed Against Drs. Baird and Ankarlo (dkt. #161)

Goodvine also seeks leave to add Drs. Baird and Ankarlo as defendants in this action on the basis that these doctors (1) treated him during the relevant period, (2) were aware of both his tendency to inflict self-harm and inadequacies in the prison's response to his threats of self-harm, and (3) failed to implement the court's restraint protocol. In his original complaint, Goodvine named both doctors as defendants. The court denied Goodvine leave to proceed against these doctors on a deliberate indifference claim because these doctors, in addition to a host of other named defendants, lacked "the authority to order the changes necessary to ensure that Goodvine was confined in a cell where he could not access (or keep) dangerous materials, or had appropriately delegated that authority." (8/16/12 Opinion & Order (dkt. #21) 8.) In the present motion Goodvine states that he failed to mention in his pleading that "he wrote to the persons (and spoke to Dr. Baird) … many times regarding the need for a therapeutic restraint protocol." (Dkt. #161, at 2.) This new factual allegation, however, does not address the court's concern that these defendants lacked authority to order the changes necessary to ensure Goodvine's safety. Accordingly, the court will deny Goodvine leave to amend his complaint to add these defendants.

17

## IX.   Motion for Leave to Move for Summary Judgment (dkt. #162)

Plaintiff also seeks an extension of the lapsed deadline for filing a motion for summary judgment.  Dispositive motions were due on or before June 7, 2013.  (Dkt. #43.)  Defendants previously filed a motion on April 5, 2013 (dkt. #73), briefing of which was stayed by the court pending a report of a neutral psychiatric expert (dkt. #97). Since the neutral expert has now filed his report, the court anticipates that defendants may also want to renew their own motion for summary judgment.  Accordingly, the court is inclined to set a new dispositive motion deadline, allowing both sides an opportunity to file.  In any event, the court will take up this issue at the September 26, 2013, telephonic hearing and reserve ruling on plaintiff's motion for leave to file summary judgment until that time.


## X.   Motion for the Court to Take Notice (dkt. #168)

In this motion, Goodvine complains that defendants are not in compliance with the court's May 16, 2013, order granting in part and denying in part plaintiff's motion to compel.  (Dkt. #114.)  In particular, Goodvine complains that (1) documents are missing from his "security file;" and (2) individuals or offices to which the DOJ has directed Goodvine to contact for requested materials are not responding to his requests.  As for the second issue, Goodvine specifically alleges that:  (1) he has contacted Melissa Schueler three times as directed by the DOC, but that she has failed to respond; and (2) he has made repeated requests to view a videotape of the July 16-17, 2012, incident, but has made no traction.

On the first issue, defendants respond that "[d]ocuments responsive to Goodvine's request, if any, would be contained in his [security file] records," and that he acknowledges "that he has been given the opportunity to [review the record], and that he has done so." (Defs.' Opp'n (dkt. #169) 1.)  As previously ruled, since defendants have produced Goodvine's security file, they need not do more.  If the file is lacking in some way, plaintiff may use this fact to his advantage on summary judgment or at trial.

As for Goodvine's second issue, defendants contend that Goodvine only mentions that he contacted Melissa Schueler on three occasions to no avail, but fails to state "when or how he contacted Melissa Schueler, or what information he requested, nor her response." (Defs.' Opp'n (dkt. #169) 2.)  Defendants also note that Schueler is out of the office and unable to respond to Goodvine's claims.  (*Id.* at 2 n.1.)  Within ten (10) days, the court will require defendants to file an affidavit responding to Goodvine's claims that Schueler has been unresponsive to his requests for information.  The court will then take up this issue during the September 26, 2013, hearing.

As for Goodvine's complaint that despite repeated requests to the security office, he has not been allowed to view the videotape of the July 16-17 incident, defendants contend that security services has recently confirmed that (1) Goodvine may view the video and (2) he can coordinate with the Program Services Director to schedule a time. (Defs.' Opp'n (dkt. #169) 2-3.)  Defendants are ordered to act in good faith in expediting Goodvine's viewing.  To the extent Goodvine has not been allowed to view the videotape before September 26, 2013, the court will address whether sanctions should be entered.

19

ORDER

IT IS ORDERED that:

1) Plaintiff Christopher Goodvine's June 10, 2013, Motion for Protective Order and Motion to Enforce Preliminary Injunction (dkt. #115) is DENIED IN PART and RESERVED IN PART as set forth above;

2) Plaintiff's June 20, 2013, Motion for Sanctions and July 15, 2013 Supplemental Motion for Sanctions (dkt. ##122, 144) are DENIED;

3) Plaintiff's July 9, 2013, Motion to Compel (dkt. #142) is DENIED IN PART and RESERVED IN PART pending further hearing;

4) Plaintiff's July 9, 2013, Motion to Compel (dkt. #143) is GRANTED IN PART, DENIED IN PART and RESERVED IN PART pending defendants' compliance with the court's instructions set forth above;

5) Plaintiff's July 17, 2013, Motion for Protective Order (dkt. #150) is DENIED;

6) Plaintiff's August 5, 2013, Motion to Compel (dkt. #158) is GRANTED IN PART and DENIED IN PART as set forth above.  Plaintiff is awarded $1.20 for postage, $2.40 for copies, $2.50 for labor pursuant to Rule 37(c)(5), along with $100 in court-ordered sanctions;

7) Plaintiff's Motion to Proceed Against Defendants Dr. Baird and Dr. Ankarlo (dkt. #161) is DENIED;

8) Plaintiff's Motion for Leave to Move for Summary Judgment (dkt. #162) is RESERVED pending further hearing;

9) Plaintiff's Motion for the Court to Take Notice (dkt. #168) is DENIED IN PART and RESERVED IN PART pending compliance with the court's instructions set forth above; and

10) A telephonic scheduling conference will be held by the court on this matter on September 26, 2013, at 9:30 am with defendants' counsel to initiate the call.

Entered this 13th day of September, 2013.

BY THE COURT:
/s/
_____

WILLIAM M. CONLEY
District Judge