IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER GOODVINE,

        Plaintiff,

v.

GARY ANKARLO, *et al.*,

        Defendants.

OPINION AND ORDER

12-cv-134-wmc

---

Plaintiff Christopher Goodvine filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while incarcerated by the Wisconsin Department of Corrections ("WDOC") at the Columbia Correctional Institution ("CCI") in Portage, Wisconsin. During Goodvine's lengthy period of incarceration, his tendency to engage in serious self-harm has posed a considerable challenge to correctional officers, prison officials and treatment providers, as well as this court in attempting to address his many claims. In fairness to Goodvine, it remains unclear what part of his self-harming conduct is compelled by mental illness or defect versus the result of maladaptive, conscious reasoning, although it seems likely to be a combination of both. Regardless, the parties seem to be in agreement that some form of Dialectical Behavior Therapy ("DBT") is Goodvine's hope for learning to control his actions.

In this lawsuit, Goodvine primarily asserts that defendants were deliberately indifferent to the need to take reasonable steps to prevent him from engaging in further acts of self-harm. Goodvine claimed further that defendants were deliberately indifferent

to his need for adequate mental health care. Now pending before the court is Goodvine's recent motion to modify this court's preliminary injunction, essentially on the eve of trial. In his motion, Goodvine seeks a preliminary order for the second time in this case that would compel defendants to provide him with a specific mental health treatment, DBT, at the Wisconsin Resource Center ("WRC"). (Dkt. #301.) Defendants have filed a response in opposition to Goodvine's motion, to which Goodvine has filed a reply and was allowed to further supplement the record. After considering the parties' submissions, the pleadings and evidence adduced previously, as well as the oral arguments at today's hearing, the court will deny Goodvine's motion for reasons explained on the record. What follows is a written opinion and order memorializing the basis for that denial, as well as the reasons for requiring plaintiff to respond to defendants' oral motion to lift the existing preliminary injunction.

## BACKGROUND

As noted previously in this case, Goodvine has been diagnosed with an assortment of mental disorders, including Borderline Personality Disorder, Antisocial Personality Disorder with narcissistic features, a substance abuse disorder and chronic depression. As an inmate housed throughout this lawsuit in a highly restrictive disciplinary segregation unit, Goodvine has assaulted staff, as well as other inmates, and on numerous occasions has engaged in acts of self-harm, occasionally swallowing hoarded medication, but more often cutting himself with sharp objects that he has obtained or fashioned for himself from materials in his cell. Although Goodvine has frequently been placed in observation

status with limited access to personal property, he continues to find ways to harm himself.

Based on the frequency of these acts of self-harm and the severity of his injuries, Goodvine was able to obtain a preliminary injunction from this court which requires that certain steps be taken to prevent him from further self-harm during the remainder of this lawsuit. Following an evidentiary hearing, the court in particular found that Goodvine demonstrated: (1) at least some likelihood of success on the merits with respect to his claim that defendants had become deliberately indifferent to his ongoing mental health needs and resulting acts of self-mutilation; and (2) his acts of self-harm had escalated to the point that he was at substantial risk of doing serious bodily harm or even killing himself. Accordingly, the court issued an order on February 7, 2013, granting in part Goodvine's request for a preliminary injunction and ordering the defendants to adopt the following, interim protocol:

> [D]efendants must place plaintiff in "observation" when he reports a strong urge to harm himself; and plaintiff may be released from observation status only upon the considered decision of his psychological care providers after seeking input from plaintiff. Additionally, defendants must place plaintiff in a physical (four-point, chair, or other type) restraint for a single, four-hour period if plaintiff (1) has been in observation for at least the twelve previous hours, (2) reports an uncontrollable urge to harm himself, (3) has some means to do so, and (4) volunteers to be placed in restraints.

(Dkt. #59, at 2.) In entering this admittedly preventative (rather than therapeutic) and decidedly temporary solution, this court also invited "a viable alternative offered by either side if demonstrated to be effective at protecting plaintiff's short-term safety while increasing his chance for a long-term positive outcome." (*Id.* at 2-3.)

3

Since the preliminary injunction was entered, a court-appointed neutral expert, Dr. Kenneth Robbins, has opined that placing Goodvine in restraints as contemplated by the court's protocol is likely detrimental to his long-term need to learn to control his own impulses and, ultimately, involves a decision best left to the professional discretion of his treating mental health providers, not Goodvine. (Dkt. #166 at 6.) Instead of a protocol based on physical restraints, Dr. Robbins recommends treatment and an aggressive medication regimen as a better option for bolstering Goodvine's mental health and well-being. (*Id.*) After considering Dr. Robbins's report, the court indicated that it was inclined to vacate the preliminary injunction, but, before doing so, would recruit counsel on Goodvine's behalf and request briefing from the parties. (Dkt. #285 at 91.)

Through his *pro bono* counsel, Goodvine moves to modify the preliminary injunction to require the defendants to provide him with DBT treatment for his diagnosis of Borderline Personality Disorder ("BPD"). In support of that motion, Goodvine notes that Dr. Robbins has recommended DBT, in particular, to treat this condition. Dr. Robbins specifically observes in his expert report that Goodvine "does not have the tools to manage successfully in a correctional facility" and that "[t]o stop this very destructive pattern" in which Goodvine self-harms and then receives more time in segregation, which "further exacerbates his psychiatric illness." (Dkt. #166 at 5-6.) Goodvine also points out that his primary psychologist at CCI, Dr. Dan Norge, agrees that DBT is the recommended and only empirically validated treatment for BPD. (Dkt. #316 at 2.) Of course, Goodvine's counsel ignores the fact that nowhere in Dr. Robbins' opinion is there

4

any suggestion that plaintiff's diagnosis and current treatment plan, which is purported to include an element of DBT treatment, amounts to deliberate indifference.

OPINION

A party seeking preliminary injunctive relief must demonstrate as a threshold matter that he: (1) has a reasonable likelihood of success on the merits; (2) lacks an adequate remedy at law; and (3) will suffer irreparable harm if relief is not granted. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If these elements are met, the court must then balance, on a sliding scale, the irreparable harm to the moving party with the harm an injunction would cause to the opposing party. *Id.*

I.   **Likelihood of Success**

According to Goodvine, prison officials have refused to provide him with DBT treatment and have instead offered other ineffective programming that has failed to prevent him from engaging in acts of self-harm. In particular, Goodvine notes that he has been transferred to the WRC previously to participate in a program called "Coping Skills in Segregation," which has proven ineffective and been used by defendants as an unnecessary hurdle to Goodvine getting more promising DBT treatment. As evidence that his current treatment regimen is ineffective, Goodvine notes that he recently engaged in serious acts of self-harm on August 17th and 20th and again on September 1, 2014. On each of these occasions, Goodvine further claims the self-harm occurred *after* he

5

requested to be placed under observation status or in restraints, but was refused in direct violation of the court's preliminary injunction. Goodvine required emergency medical care at Divine Savior Hospital following two of these self-harm incidents.[1]

Goodvine is essentially arguing now that the court should preliminary order his referral to WRC for DBT treatment without first having to complete the Coping Skills program. Goodvine maintains that providing ineffective alternatives or "requiring him to jump through hoops before he receives DBT is simply setting him up to fail." Given the diagnoses by Dr. Robbins and his extensive record of self-harm, Goodvine further asserts that he easily meets the requirement for additional preliminary injunctive relief.

Defendants oppose Goodvine's motion to modify the preliminary injunction for a number of reasons. *First*, most fundamentally, defendants point out correctly that Goodvine no longer has a claim for relief based on the adequacy of his mental health care in this case. Previously, the court granted defendants' motion for summary judgment on the very issue for which Goodvine now seeks relief: his claim that defendants were deliberately indifferent to his serious mental health needs by denying him DBT treatment at WRC. In doing so, the court noted that Goodvine's treating psychologist at CCI referred him to WRC in November 2013 to participate in a DBT program. While treatment providers at CCI can *refer* an inmate to WRC for treatment, the ultimate

---

[1] The court takes judicial notice from the pleadings in this case and in another case filed recently by Goodvine, that he has harmed himself on several other occasions since the preliminary injunction was ordered in this case. *See Davis and Goodvine v. Meisner, et al.*, 14-cv-278-wmc (W.D. Wis.) (Dkt. # 15, *Amended Complaint*, at ¶¶ 93, 266-85). The record is unclear whether Goodvine sought intervention consistent with the court's preliminary injunction on any of those other occasions, or if so, whether it was refused.

decision whether a particular inmate is eligible for such treatment is up to staff at WRC. (*See* Dkt. #83, *Affidavit of Jeff Heise*.) In Goodvine's case, WRC staff determined that Goodvine had to first successfully complete the Coping Skills program before he could begin DBT. Since there is no dispute that Goodvine refused to participate in the Coping Skills program again and was returned to CCI by WRC staff (none of whom are defendants in his lawsuit), Goodvine has already failed to establish on the merits that he was denied adequate care with deliberate indifference. In his pending motion, counsel for Goodvine also argues that his continuing acts of serious self-harm justify considering whether *additional* injunctive relief is warranted.

*Second*, even if such a claim were still viable here, defendants also point out that mental health professionals who have been treating Goodvine at CCI have made a primary diagnosis of Antisocial Personality Disorder ("APD"), not BPD, and have been treating him accordingly. In support, defendants provide a declaration from Dr. Norge, who they represent is already providing Goodvine with clinical monitoring on a weekly basis (or more as needed), individual behavior therapy that includes aspects of DBT, Cognitive Behavior Therapy ("CBT"), and Rational Emotive Behavior Therapy ("REBT"), along with current events and educational packets, and out-of-cell "books on tape" time. (Dkt. #307, Norge Decl., at ¶ 15.) In Dr. Norge's opinion, DBT alone is not sufficient to treat Goodvine's mental health issues.[2] (*Id.* at ¶¶ 25-26.) He believes that Goodvine

---

[2] Goodvine argues that the court should disregard Norge's declaration because he has not been qualified as an expert in this case. Goodvine notes further that Norge has received only "brief" training in DBT, which undermines his credibility as a treatment provider. As Goodvine's treating psychologist, Dr. Norge is qualified to provide an overview of the

would benefit from CBT and REBT, along with the aspects of DBT as developed in Goodvine's current treatment plan. (*Id.* at ¶ 26.) Defendants argue, therefore, that Goodvine is currently receiving appropriate mental health care, which includes individualized DBT treatment at CCI. Whether or not this falls short of the accepted "standard of care" as plaintiff articulates it in reliance on Dr. Robbins' testimony is largely beside the point, since the court could only fashion relief based on deliberate indifference to needed healthcare, something plaintiff has neither begun to establish, nor properly before this court. All of this is essentially consistent with Dr. Norge's subsequent deposition testimony as well. (Dkt. #316, Ex. A.)

There appears to be no dispute that Goodvine has continued to engage in serious acts of self-harm despite the treatment he has been offered, which *might* raise a legitimate question as to whether the treatment Goodvine is receiving is effective to ensure his health and safety. *See Berry v. Peterman*, 604 F.3d 435, 441-42 (7th Cir. 2010) (noting that prison officials violate the Eighth Amendment when they adhere to a course of treatment that they know to be ineffective). To the extent that Goodvine's unabated acts of self-harm indicate that his prescribed treatment at CCI has been ineffective, or as Goodvine argues Dr. Norge's testimony, might allow one to infer as much, plaintiff *might* be able to demonstrate at least some likelihood of success on the merits of a claim concerning the adequacy of his care, but even this would only be relevant if that issue

---

treatment that Goodvine is currently receiving at CCI and to opine as to its efficiency. Thus, the court will accept Norge's declaration for purposes of deciding the pending motion to modify the preliminary injunction, as well as his deposition transcript recently provided by plaintiff.

8

were still before the court, and it is not. Since plaintiff cannot show any likelihood of succeeding on the merits, the court need go no further with respect to plaintiff's current motion to modify. *See AM Gen. Corp. v. DaimlerChysler Corp.*, 311 F.3d 796, 830 (7th Cir. 2002) ("no likelihood of success on the merits is reason enough to deny the motion for preliminary injunction without further discussion").

## II. Current Preliminary Injunction

At noted at the outset of this opinion and order, there is still the question of the court maintaining its current preliminary injunction in light of the fact that continuing to allow Goodvine some control over the use of observation status or restraints may be counterproductive, at least to his long-term mental health. Defendants' argue that the preliminary injunction should be vacated altogether at this point, while plaintiff asks that it be maintained unless or until Goodvine can undergo meaningful treatment for underlying mental illness that is contributing to his acts of self-harm. The court will give plaintiff 21 days to provide additional support for the continuation of the preliminary injunction. Defendants may have 14 days to respond.

Ultimately, the court must balance the potential harm the continuing of this injunction will have on defendants as the opposing party "against the irreparable harm the moving party will suffer if relief is denied." *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012). In comparison with the severe, potentially life-threatening injuries that Goodvine has inflicted upon himself the short-term relief provided may well still be justified if it can be shown to provide a viable tool for

preventing Goodvine from committing self-harm by removing poorly exercised discretion from security officials like defendants here. This is not to say that a better option might be for prison officials at CCI to make another referral for Goodvine to participate in the DBT program at WRC. Even if it had the issue before it, however, the court can find no legal basis to order these officials to provide Goodvine with DBT without first requiring him to complete the Coping Skills program.[3]

In the end, this case is concerned with protecting Goodvine from acts of self-harm, which, as Dr. Robbins notes, is inherently intertwined with his access to adequate mental health care. As the case is presently positioned, the court asks both parties to be mindful that the outcome at trial appears unlikely to result in a solution that will address the

---

[3] Although Goodvine maintains that he has already successfully completed the Coping Skills program -- not once but twice in 2010 and October 2012 -- and should not have to take it again, the court takes judicial notice of records from another lawsuit that call into question whether his previous completion of that program could be deemed "successful." In that respect, upon completing the Coping Skills program in 2012, staff determined that Goodvine was "not a candidate for DBT." *Goodvine v. Monese, et al.*, Case No. 13-cv-1057 (E.D. Wis.). (Dkt. # 35, *Affidavit of Dr. George Monese*, at ¶ 27.) Similarly, as the record in this case (Case No. 12-cv-134-wmc) reflects, WRC staff once again determined that it would not be appropriate to offer DBT in the fall of 2013, until Goodvine first completed the Coping Skills program, which was described as "the base from which other programming decisions would be made, including the decision whether to provide [DBT]." (Dkt. # 216, *Decl. of Dennis Kavanaugh*, ¶¶ 11-13.) In other words, successful completion of the Coping Skills serves as a barometer for gauging an inmate's ability to participate meaningfully in the type of DBT treatment offered at WRC. Dr. Norge hints at why this is so in his declaration, explaining that the DBT program at WRC utilizes group therapy sessions. (Dkt. # 307, ¶ 22.) Goodvine has a record of manipulative behavior and other problems, including assaults on staff and other prisoners. Because of Goodvine's record of problematic behavior, Norge questions whether group therapy sessions would be beneficial, presumably both for Goodvine and for other members of the therapy group. On this record, and primarily due to Goodvine's record of misconduct and poor impulse control, the court cannot say that requiring Goodvine to repeat the Coping Skills program amounts to deliberate indifference to his medical needs.

intractable problem posed by Goodvine's circumstances, namely that -- whatever his precise diagnosis -- Goodvine appears to suffer in part from a personality disorder that not only frustrates the ability of those who are legitimately trying to protect and treat him, but is ill-suited to the isolated conditions of segregated confinement in which he necessarily finds himself, albeit for valid security reasons.

## ORDER

IT IS ORDERED that:

(1) Christopher Goodvine's motion to modify the preliminary injunction (dkt. # 301) is DENIED;

(2) within twenty-one (21) days of the date of this order, plaintiff is to provide a response to defendants' oral motion to lift the preliminary injunction currently in place in this matter; and

(3) defendants may have fourteen (14) days to reply.

Entered this 29th day of January, 2015.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge